UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

ARTIS B.[1],

                        Plaintiff,

      v.                                  Case # 19-CV-1124-FPG
                                              DECISION AND ORDER

COMMISSIONER OF SOCIAL SECURITY,

                        Defendant.
_____

## INTRODUCTION

Plaintiff Artis B. brings this action pursuant to Title XVI of the Social Security Act seeking review of the denial of his application for Supplemental Security Income ("SSI").

Plaintiff protectively applied for SSI on November 12, 2013, alleging disability due to right arm arthritis, anxiety, depression, and traumatic brain injury. Tr.[2] 262, 320. After the Social Security Administration ("SSA") denied his application, Plaintiff testified at a hearing before an Administrative Law Judge ("ALJ"). Tr. 38-68. On July 30, 2018, the ALJ issued an unfavorable decision. Tr. 14-32. After the Appeals Council denied Plaintiff's request for review, the SSA's decision became final and Plaintiff appealed to this Court. ECF No. 1. This Court has jurisdiction to review the SSA's final decision pursuant to 42 U.S.C. § 1383(c)(3).

Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). ECF Nos. 11, 12. For the following reasons, Plaintiff's motion is DENIED, the Commissioner's motion is GRANTED, and this matter is DISMISSED WITH PREJUDICE.

---

[1] In accordance with this Court's November 18, 2020 Standing Order regarding the identification of non-government parties in social security opinions, available at https://www.nywd.uscourts.gov/standing-orders-and-district-plans, this Decision and Order will identify the plaintiff using only his first name and last initial.

[2] "Tr." refers to the administrative record in this matter. ECF No. 7.

1

**LEGAL STANDARD**

I.   **District Court Review**

When a district court reviews a final decision of the SSA, it does not "determine de novo whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998). Rather, the court "is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citing 42 U.S.C. § 405(g)) (other citation omitted). The Commissioner's decision is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (citations omitted).

II.   **Disability Standard**

To determine whether a claimant is disabled within the meaning of the Social Security Act, an ALJ follows a five-step sequential evaluation: the ALJ must determine (1) whether the claimant is engaged in substantial gainful work activity; (2) whether the claimant has any "severe" impairments that significantly restrict his or her ability to work; (3) whether the claimant's impairments meet or medically equal the criteria of any listed impairments in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"), and if they do not, what the claimant's residual functional capacity ("RFC") is; (4) whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work; and (5) whether the claimant's RFC permits him or her to perform alternative substantial gainful work which exists in the national economy in light of the claimant's age, education, and work experience. *See Bowen v. City of New York*, 476 U.S.

467, 470-71 (1986); *Lesterhuis v. Colvin*, 805 F.3d 83, 85 n.2 (2d Cir. 2015); *see also* 20 C.F.R. § 416.920.

## DISCUSSION

### I.     The ALJ's Decision

The ALJ analyzed Plaintiff's benefits application using the process described above.  At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since his application date.  Tr. 19.

At step two, the ALJ assessed Plaintiff with the following severe physical and mental impairments: lumbar degenerative disc disease, lumbago, right lateral epicondylitis, major depressive disorder, and anxiety disorder.  Tr. 20.

At step three, the ALJ found that none of Plaintiff's impairments met or medically equaled the criteria of any Listings impairment.  Tr. 21.

The ALJ then determined that Plaintiff retained the RFC to perform medium work with several additional restrictions.  Tr. 23-24.  Specifically, Plaintiff could walk for four hours; sit or stand for six hours; occasionally lift up to 40 pounds; frequently lift or carry up to 25 pounds; and occasionally push, pull, climb ramps and stairs, balance on level surfaces, stoop, and kneel.  Tr. 23. He could never crouch or crawl.  Tr. 24.  He could engage in frequent but not constant reaching, including in front and/or laterally with occasional overhead reaching for the right upper extremity.  Tr. 23.  He had no other manipulative limitations.  Tr. 23.  He could never tolerate exposure to unprotected heights or moving machinery or moving mechanical parts.  Tr. 23.  He should avoid exposure to extreme cold.  Tr. 23-24.  He could understand, carry out, and remember simple instructions; make simple work-related decisions; and could work in a low-stress environment, meaning one with no supervisory responsibilities and no independent decision-making required

except with respect to simple, routine decisions and few, if any, changes in work routines, processes, or settings. Tr. 24. He could occasionally have contact and interaction with supervisors and co-workers and incidental contact with the public. Tr. 24. He could be around coworkers throughout the day, but could not engage in tandem job tasks requiring cooperation with coworkers or work that required teamwork, such as on a production line. Tr. 24.

At step four, the ALJ found that Plaintiff had no past relevant work. Tr. 30.

At step five, the ALJ found that Plaintiff could adjust to other work that exists in significant numbers in the national economy. Tr. 30-31. Accordingly, the ALJ found that Plaintiff was not disabled. Tr. 32.

## II.     Analysis

### A.     Mental Limitations

Plaintiff first argues that the ALJ failed to give good reasons for rejecting the opinion of Plaintiff's treating psychiatrist, Dong Yup Shim, M.D., and failed to develop the record as to Plaintiff's mental health impairments. The Court disagrees.

On October 12, 2017, Dr. Shim wrote a letter in support of Plaintiff's benefits application. Tr. 771. He indicated that he had treated Plaintiff since February 1, 2016. Tr. 771. He noted that Plaintiff had a history of psychiatric treatment since the 1990s and had been hospitalized for psychiatric problems multiple times. Tr. 771. He diagnosed Plaintiff with depression and described Plaintiff's symptoms as feelings of sadness, hopelessness, fatigue, crying, lack of motivation and concentration, irritability, anger, and panic attacks. Tr. 771. Dr. Shim opined that Plaintiff had been disabled since 2008 and was not able to work for any gainful employment. Tr. 771. He indicated that Plaintiff had tried some therapeutic work programs but was never stable enough to look for a job. Tr. 771.

The ALJ acknowledged that Dr. Shim was a treating physician, but gave his opinion little weight because it was conclusory, lacked a function-by-function assessment, was inconsistent with other evidence of normal mental status evaluations, and opined on the ultimate issue of disability, which is an issue reserved to the Commissioner. Tr. 29. The Court finds that these reasons were sufficient and well supported.

First, as the ALJ noted, the opinion lacked any functional assessment and merely concluded that Plaintiff was disabled. Such a statement is "owed no deference," because a determination of disability is a legal decision that is "up to the ALJ, the Commissioner, and the courts to decide." *Michels v. Astrue*, 297 F. App'x 74, 76 (2d Cir. 2008) (summary order).

Additionally, Dr. Shim's opinion was inconsistent with other record evidence. For example, Dr. Shim stated that Plaintiff was never stable enough to look for a job, but as the ALJ noted, Plaintiff looked for work and even engaged in some work during the disability period. Tr. 27-28. The record also contained plenty of normal mental health evaluations, or at least evaluations inconsistent with total disability. During various exams, Plaintiff was cooperative and pleasant and exhibited euthymic mood, congruent affect, intact insight and judgment, intact attention and concentration, and goal-directed thought processes several times throughout the relevant period. Tr. 449, 456, 493, 561, 571, 574, 582, 584, 589, 601-02, 606, 609, 614, 718, 812, 819, 825, 837-38, 844. During many of the times he exhibited mental status abnormalities, such as impaired intact and judgment, he was actively drinking alcohol. Tr. 720.

Further, consultative examiner Janine Ippolito, Psy. D., examined Plaintiff twice, once in 2014 and again in 2018. In 2018, Dr. Ippolito found that Plaintiff was somewhat anxious and exhibited fair insight and fair to poor judgment, but she opined that Plaintiff could understand, remember, and apply simple directions and instructions; sustain an ordinary routine and regular

attendance at work; and maintain personal hygiene and appropriate attire with no evidence of limitations.  Tr. 785  He could understand, remember, and apply complex directions and instructions; sustain concentration; and perform a task at a consistent pace with mild limitations. Tr. 785-86.  He could use reason and judgment to make work-related decisions, interact adequately with supervisors, coworkers and the public, regulate emotions, control behavior, maintain well-being, and demonstrate awareness of normal hazards with moderate limitations.  Tr. 786.  Dr. Ippolito noted that Plaintiff reported being able to perform activities of daily living independently. Tr. 785.  She suggested that Plaintiff receive substance abuse treatment in addition to continuing with psychological and psychiatric treatment.  Tr. 786.  Her 2014 opinion was substantially similar. Tr. 494.

Plaintiff argues that the ALJ was not entitled to reject Dr. Shim's treating opinion in favor of Dr. Ippolito's consultative opinion, but as described above, Dr. Ippolito's opinion was not the only reason the ALJ discounted Dr. Shim's opinion.  Instead, Dr. Ippolito's opinion was part of a larger body of evidence that conflicted with Dr. Shim's restrictive opinion.  "[T]he opinion of the treating physician is not afforded controlling weight where, as here, the treating physician issued opinions that are not consistent with other substantial evidence in the record, such as the opinions of other medical experts."). *See Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004).  And the ALJ was entitled to evaluate the record as a whole, resolve conflicts in the evidence, and develop an RFC based on all of the evidence.  *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (summary order).  The Court finds that the ALJ properly did so here.

Plaintiff further argues that the ALJ should have developed the record by seeking records from Plaintiff's mental health hospitalizations.  However, "[t]he ALJ is not required to develop the record any further when the evidence already presented is adequate for [the ALJ] to make a

determination as to disability." *Janes v. Berryhill*, 710 F. App'x 33, 34 (2d Cir. 2018) (summary order) (citation and internal quotation marks omitted). Here, the ALJ discussed Plaintiff's longitudinal mental health history thoroughly. The evidence was mixed: there were some normal findings, but there were also abnormal ones. The ALJ did not ignore the abnormal findings. To the contrary, she accounted for mental health impairments by limiting Plaintiff to work involving simple instructions and decisions, a low-stress environment with few changes, only occasionally interacting with supervisors, coworkers, and the public, and no teamwork. Tr. 24. Accordingly, remand is not required.

### B.    Physical Limitations

Plaintiff next argues that the ALJ's physical RFC determination was not supported by substantial evidence. Specifically, he contends that the ALJ gave great weight to the opinion of consultative examiner Hongbiao Liu, M.D., but then failed to adopt the limitations Dr. Liu assigned. ECF No. 11-1 at 19-20.

The Court is puzzled by this argument, but it appears to be premised on a misreading of Dr. Liu's opinion. Plaintiff characterizes Dr. Liu's opinion as indicating that Plaintiff could only sit for one hour at a time and stand for one hour at a time, and can only sit and stand combined for a total of three hours a day. ECF No. 11-1 at 19-20. But Dr. Liu's opinion actually indicates that Plaintiff could sit for one hour at a time and stand for one hour at a time, but can sit for three hours total and stand for three total hours in a workday. Tr. 777. In other words, Dr. Liu opined that Plaintiff could sit and stand combined for six hours total. Tr. 777. He also opined that Plaintiff could walk for four hours total. Tr. 777. This accounts for a complete eight-hour workday. Tr. 777. Plaintiff complains that the ALJ's determination that Plaintiff could sit and stand for six

7

hours total is inconsistent with Dr. Liu's opinion, but it is actually perfectly consistent with it. Accordingly, the Court finds that this argument lacks merit.

## CONCLUSION

For all of the reasons stated, Plaintiff's Motion for Judgment on the Pleadings, ECF No. 11, is DENIED, the Commissioner's Motion for Judgment on the Pleadings, ECF No. 12, is GRANTED, and Plaintiff's Complaint, ECF No. 1, is DISMISSED WITH PREJUDICE. The Clerk of Court is directed to enter judgment and close this case.

IT IS SO ORDERED.

Dated: November 23, 2020
      Rochester, New York

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court